Steven Lyle **HARDMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 66474.

Court of Criminal Appeals of Texas, Panel No. 3.

March 18, 1981.

Rehearing Denied April 15, 1981.

Paul Tatum, Nacogdoches, for appellant.

Robert Huttash, State's Atty., Alfred Walker, Asst. State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from an order revoking probation.

On February 2, 1978, in a trial before the court, appellant was convicted upon his plea of guilty of burglary of a vehicle. Punishment was assessed at 2 years, probated. On October 5, 1978, the State filed a motion to revoke appellant's probation. On the same day the motion to revoke was filed, a warrant was issued for appellant's arrest. The court held a hearing on the motion to revoke on April 16, 1980. Appellant's probation was revoked at the conclusion of the hearing.

Initially, appellant contends his original conviction is invalid. He maintains the court erred in accepting his plea of guilty without having the indictment read or securing a waiver of such reading.

The judgment in this case recites in part: "... and the Defendant ... pleaded guilty to the offense charged in the indictment...." There was no objection to the approval of the record. This matter is raised for the first time in this appeal.

Art. 26.11, V.A.C.C.P., provides as follows:

"The name of the accused having been called, if no suggestion, such as is spoken of in the four preceding Articles, be made, or being made is disposed of as before directed, the indictment shall be read, and the defendant asked whether he is guilty or not, as therein charged."

In *Clardy v. State*, Tex.Cr.App., 436 S.W.2d 535, the defendant presented a contention similar to that now presented and it was stated:

"Next, appellant urges that the trial court erred in accepting his plea of guilty without having the indictment read to him and without securing a waiver of such reading. He cites and relies upon Article 26.11, V.A.C.C.P., and *Johnson v. State*, 118 Tex.Cr.R. 291, 42 S.W.2d 782.

". . .

"The judgment in the case at bar clearly reflects that after waiver of trial by jury the appellant 'was arraigned and in open court pleaded guilty to the charge contained in the indictment.' Such instrument further reflects 'The Court, having heard the indictment read, the defendant's plea thereto, the evidence submitted, and the argument of counsel thereon * * *'

". . .

"If the recitations in the judgment and other parts of the record were not correct, then we observe no objection to the approval of the record was offered by the appellant. We further call attention to the provisions of Article 44.24, V.A.C.C.P. (Presumptions on Appeals) which require this Court to presume, among other things, that the defendant was arraigned and that he pleaded to the indictment unless such matter was made an issue in the court below, or unless it affirmatively appears to contrary from the record. See *Boening v. State* [Tex.Cr.App., 422 S.W.2d 469], supra.

"We find from what has been said that there has been a compliance with Article 26.11, supra, contrary to appellant's contention." Id. at 536 and 537.

▮ We conclude that the record in the instant case does not support appellant's contention concerning an alleged violation of Art. 26.11, supra. Moreover, in *Reed v. State*, Tex.Cr.App., 500 S.W.2d 497, it was held that a contention such as that now presented may not be raised for the first time on appeal.

Appellant next contends his original plea of guilty is invalid. He maintains the court failed to properly admonish him on the range of punishment in compliance with Art. 26.13, V.A.C.C.P.

The record from the plea of guilty proceeding reflects as follows:

"THE COURT: All right. In view of the—your plea of guilty and the evidence showing you're guilty, the Court will find you guilty. And, uh,—First, let me say this. You're familiar with the range of punishment, I don't believe I've told you this, are you familiar with the range of punishment? In the case of Burglary of a Vehicle it is time of not less than two nor more than ten years and by a fine of $5,000.00 or both such fine and imprisonment. If you didn't understand that you now would want to withdraw your plea of guilty you may do so. I didn't explain that to you. You understand it and you still want to plead guilty?

"THE DEFENDANT: Yes."

▮ Prior to accepting a plea of guilty, the court is to admonish the defendant of the range of punishment attached to the offense. Art. 26.13(a)(1), supra. If the record does not affirmatively show an admonishment as to the range of punishment, the guilty plea is invalid. *McDade v. State*, Tex.Cr.App., 562 S.W.2d 487.

▮ Although the court gave appellant the admonishment after accepting his plea, the record further reflects that appellant was given the option of withdrawing the plea following the belated admonishment on the range of punishment. Appellant persisted in entering a plea of guilty. Under such circumstances, we find the court substantially complied with giving the required admonishment. See *Whitten v. State*, Tex.Cr.App., 587 S.W.2d 156; Art. 26.13(c).

▮ Finally, appellant contends the court abused its discretion in revoking his probation. He maintains that the revocation hearing held after the expiration of the probationary term was unauthorized because of a lack of a diligent effort to apprehend him following the filing of the motion to revoke.

In *Cotton v. State*, Tex.Cr.App., 523 S.W.2d 673, the Court stated:

"Although we do not condone arbitrary delays in revocation proceedings, we do reiterate that to preserve such contention it is incumbent upon the probationer to raise and develop the issue at such hearing to secure appellate review."

Appellant did not raise his contention concerning a lack of diligence before or during the revocation hearing. Therefore, he has failed to preserve this alleged error in that it may not be raised for the first time on appeal. We find this contention to be without merit.

Appellant does not challenge the sufficiency of the evidence to support the court's order revoking probation. Nevertheless, the dissent would reverse the revocation order on the basis of unassigned error by employing an estoppel theory under contract law.

The record reflects that appellant's probation was revoked for failing to:

"Report to the Probation Department monthly in writing between the 1st and 10th day of each month, and in person within ten days of notice to do so; inasmuch as he, Steven Lyle Hardman, did fail to report in person and in writing for the months of March, 1978; April, 1978; May, 1978; June, 1978; July, 1978; August, 1978; and September, 1978;

"Pay the cost of Court in this cause in the sum of $65.20 within 60 days from the date of this judgment; inasmuch as he, Steven Lyle Hardman, paid a total of $0 over a period of eight months;

"Pay probation fee in the sum of $15.00 per month as provided by law in Article 42.12, Section 6A, of the Code of Criminal Procedures, commencing on the first day of the next month from the date of this judgment, and on the first day of each month thereafter during the term of this probation; inasmuch as he, Steven Lyle Hardman, paid $0 over a period of eight months;

"Pay restitution in the total sum of $25.00 at the rate of $25.00 per month commencing on the first day of the coming month, inasmuch as he, Steven Lyle Hardman, paid $0 over a period of eight months;

"Pay a Court appointed attorney's fees, assessed as cost, as provided by law, in the sum of $250.00 at the rate of $50.00 per month commencing on the first day of the next month of the date of this judgment and a like sum on the first day of each month thereafter until all of said fee, assessed as cost, is paid in full; inasmuch as he, Steven Lyle Hartman, paid $0 over a period of eight months."

Anthony Chaviers testified that he was a probation officer in Nacogdoches County. After appellant received probation, Chaviers discussed the terms and conditions of the probation with him. Chaviers did not supervise appellant's probation because the reporting requirement was transferred to Harris County. Appellant was informed that he would be contacted with regard to when and with whom he was to report at the Harris County Probation Department.

Richard Brice testified that he was the chief probation officer for the 145th Judicial District Court. The State introduced a copy of an intrastate placement request sent by Brice to the Harris County Probation Department on April 24, 1978. The request was for appellant's probation to be supervised in Houston, but all restitution, fees and court costs to be mailed by appellant to the Nacogdoches County Probation Department. Finally, a copy of a letter Brice sent to appellant in Houston was introduced into evidence. The letter is dated April 24, 1978, and instructed appellant to contact the Harris County Probation Department between May 8 and 12, 1978.

Peter Zama testified that he was an adult probation officer in Houston. Zama stated that he received the request from Nacogdoches County that appellant's probation be supervised by the Harris County Probation Department. Zama wrote to appellant informing him of a date and time to report but, appellant never reported to the probation department in Houston. In July of 1978, the attempted supervision of appellant in Houston was terminated.

Brett Walker testified that he had been a probation officer in Nacogdoches County.

Walker wrote to appellant in Houston on August 7, 1978, and informed him that he may be considered in violation of his probation by failing to report to the Harris County Probation Department. Appellant was instructed to contact a probation officer in Houston within 10 days of the letter.

The evidence thus reveals that appellant was instructed on at least four occasions to report to a probation officer in Houston and that he never did so. The dissent would excuse appellant's failure to report in Houston because there is no evidence to show that appellant ever received the letters from Brice, Zama and Walker.

When a letter or other mail matter is properly addressed and mailed with postage prepaid, there is a rebuttable presumption of fact that it was received by the addressee as soon as it could have been transmitted to him in the ordinary course of the mails. *National Aid Life Ass'n v. Driskill*, 138 S.W.2d 238 (Tex.Civ.App.—Eastland 1940, no writ). In the instant case, there was no evidence to indicate that appellant never received the letters. It is therefore presumed that the letters were in fact received by appellant in Houston. Moreover, to focus solely on the letters ignores the fact that Chaviers verbally instructed appellant concerning the reporting requirement in Houston.

Although not raised in this appeal, we find the evidence supports the court's order revoking appellant's probation for failing to report. Moreover, the rule in this State is that when a unit of government is exercising its governmental powers, it is not subject to estoppel. *City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex.1970).

The dissent further maintains that the evidence is insufficient to support the court's order revoking appellant's probation for four violations other than the failure to report. As noted above, appellant does not challenge the sufficiency of the evidence to support the revocation order.

The conditions of appellant's probation required him to pay court costs of $65.20 within 60 days of the judgment $15.00 a month probation fee, restitution in the amount of $25.00 and $250.00 in attorney's fees at the rate of $50.00 a month. The court admitted, without objection, a copy of a document styled "Probation Record" maintained for appellant's probation by the Nacogdoches County Probation Department. The record contains spaces for written entries to be recorded when required probationary payments were made. The record introduced does not contain any entries indicating a payment by appellant of the required fees, costs or restitution.

The dissent maintains the pay record constitutes "zero evidence" because there was no testimony as to what the document represented or purported to represent. The dissent contends that the record was not self-proving and that there must be proof as to its contents. It is patently apparent that the dissent has confused the issues of admissibility of the record and the probative value of the record once admitted.

The record in question constitutes an official record admissible under the terms of Art. 3731a, V.A.C.S. With regard to the admissibility of that record, it was not self-proving in terms of the predicate which should be established for its introduction into evidence. However, there was no objection by appellant to the State's failure to lay the proper predicate. The pay record as admitted therefore had probative value in this probation revocation proceeding. See *Frazier v. State*, Tex.Cr.App., 600 S.W.2d 271. The record itself constitutes evidence of the facts or non-facts recited therein. 1A R. Ray, Texas Practice, Sec. 1271 (3rd ed. 1980). We conclude the pay record supports the finding that appellant failed to pay the required fees, costs and restitution. No abuse of discretion is shown in the revocation of appellant's probation.

The judgment is affirmed.

TEAGUE, Judge, dissenting.

This is an appeal from an order of the trial court revoking appellant's probation.

On *February 2, 1978*,[1] appellant was placed on probation for two years by the then presiding judge of the 145th Judicial District Court, Hon. Thomas Barlett, who was then sitting for the elected presiding judge, Hon. Jack Pierce. On *October 5, 1978*, the Hon. Herbert B. Hancock district attorney, filed an application for revocation of probation with Judge Pierce, who then ordered a warrant of arrest to issue for appellant. On *April 9, 1980*, the warrant was executed and appellant was placed in the Nacogdoches County jail. A hearing was held on *April 16, 1980*, after which Judge Pierce ordered appellant's probation revoked.

Appellant first questions the jurisdiction of the trial court to hold the revocation hearing because the term of probation had expired at the time of the hearing.

Where this Court is confronted with an order revoking the probation, after the term of probation has expired, and the issue is properly drawn on appeal, probation may nevertheless be revoked, if the following elements are proved by the State.

(1) The motion to revoke is filed within the term of probation;

(2) A warrant or capias issues within the probationary term or period;

(3) The State diligently attempts to prosecute the motion to revoke, including the apprehension of appellant;

(4) The alleged violation of probation occurred prior to the expiration of the probationary period; and

(5) The trial court holds a revocation hearing without undue delay.

See *Zillender v. State*, 557 S.W.2d 515 (Tex. Cr.App.1977), and the cases cited therein, and *Stover v. State*, 365 S.W.2d 808 (Tex. Cr.App.1963).

In reviewing the record, I find the following:

(1) Appellant received probation on February 2, 1978, and the term of probation was for two years.

(2) A motion to revoke was filed on October 5, 1978.

(3) A capias or warrant of arrest issued on the same day.

(4) Appellant was not, however, arrested until April 9, 1980.

(5) A hearing was held on April 16, 1980, after which appellant's probation was revoked.

Thus, the State, without question, satisfied four of the necessary elements of revoking a probation after the term of probation expired. The question remains: whether the State diligently attempted to prosecute the motion to revoke after filing of same and after the warrant of arrest issued, i. e., was there a diligent effort to apprehend appellant between October 5, 1978, and April 9, 1980, approximately 18 months?

Ordinarily, where an alleged violation of probation occurs within the term of probation, *and a warrant of arrest or capias issues* for the arrest of the probationer, *and the hearing* is not thereafter unduly delayed, the probation may be revoked, even though the term of probation has or would have expired at the time of the hearing. There is no question from this record that appellant was accorded a speedy hearing from the date of his arrest as the hearing was conducted exactly one week from that date. However, see *Lynch v. State*, 502 S.W.2d 740 (Tex.Cr.App.1973), the mere filing of a motion to revoke probation, without more, will not sustain an order revoking the probation. Barring any intervening causes, when the term of probation has expired, the trial court's jurisdiction over the probationer is terminated. Thus, it appears that a close reading of the cases reflects that where an application or motion to revoke probation is filed during the term of probation, *and* a warrant of arrest issues, *but* there is an unreasonable delay in either the execution of the warrant *or* there is unreasonable delay in conducting a hearing on the motion to revoke, the matter becomes quasi-jurisdictional. Should the reason for the delay not be satisfactorily shown, then the trial court does not have

---

1. Emphasis supplied throughout by the writer unless otherwise indicated.

jurisdiction over the subject, the probationer. On the other hand, if it is shown there was not an unreasonable delay in either regard, that is, the execution of the warrant or the hearing, then there is no question regarding the jurisdiction of the trial court to revoke the probation even after the term of probation has expired. Thus, it is incumbent upon the part of the party seeking to invoke the jurisdiction of the trial court to show that the trial court had jurisdiction over the subject, the probationer, at the time of the hearing, in order to obtain a valid order of revocation. Failure to carry that burden will result in fundamental or reversible error. See Art. 40.09, Sec. 13, V.A.T.C.C.P. I would, therefore, sustain appellant's first ground of error. The facts on this issue, show the following:

The Judgment placing the Defendant on probation was entered on February 2, 1978. An Application for Revocation of Probation was filed by the District Attorney on October 5, 1978, setting forth allegations of technical violations in connection with five matters. The Application to Revoke bears the clerk's file mark of October 5, 1978, a fiat reflecting the application was presented to the District Court on said date. The fiat provides for a show-cause hearing to be set on November 7, 1978, at 1:30 p. m. The order further provides for the clerk to issue a capias. The record further shows that the clerk's warrant for arrest was issued on October 5, 1978. The officer's return shows it was executed by Dora Butler, deputy for John Lightfoot, Sheriff of Nacogdoches County, Texas, bearing a return that the instrument came on hand on April 9, 1980, and was executed on April 9, 1980, *by arresting the said Defendant at Nacogdoches and placing him in the Nacogdoches County jail on April 9, 1980.*

This appears to me to also be a case of first impression on this point. In addition to *Lynch,* supra, the reader is directed to *McBee v. State,* 166 Tex.Cr.R. 562, 316 S.W.2d 748 (1958); *Pollard v. State,* 172 Tex.Cr.R. 39, 353 S.W.2d 449 (1962); *Ex parte Fennell,* 126 Tex.Cr.R. 286, 284

S.W.2d 727 (1955); *Bobo v. State,* 479 S.W.2d 947 (Tex.Cr.App.1972); *Bryant v. State,* 496 S.W.2d 565 (Tex.Cr.App.1973); and *Coffey v. State,* 500 S.W.2d 515 (Tex. Cr.App.1973); and see also *Texas Digest,* Criminal Law Key 982.3, and the cases collated thereunder.

The State's reliance on *Strickland v. State,* Tex.Cr.App., 523 S.W.2d 250 (1975), is misplaced for there the defendant testified to one fact and his probation officer contradicted his testimony, thus leaving the issue of credibility and fact as one for the trial court to adjudicate. Here, there is no evidence from any source to show any reason for the delay in the execution of the warrant of arrest.

The question, simply put, is whether the State of Texas failed, as a matter of law, to exercise due diligence in securing the execution of the warrant of arrest upon appellant, for that was their burden to sustain. I find a close analogy to this issue in civil law where a plaintiff's claim may be barred by the statute of limitations. The State here does not quarrel with the fact that by the record on appeal its agents did nothing from the time the warrant of arrest issued until same was executed. In sum, there is nothing by this record to show what, if anything, occurred with the warrant of arrest in this interim. I find what members of our Supreme Court unanimously said in *Rigo Manufacturing Company v. Thomas,* 458 S.W.2d 180 (Tex.1970), appropriate and applicable to the disposition of this cause as to this ground of error. I would hold that the mere filing of a motion or application to revoke probation will not interrupt or toll the running of the term of probation, but to interrupt the running of the term of probation, the use of diligence in procuring the execution of the arrest warrant is required and mandatory. For reasons why this is a good rule of law, see *Buie v. Couch,* Tex. Civ.App., Waco, 126 S.W.2d 565, 566 (1939). I would therefore find, as a matter of law, that the State failed in this cause to satisfy its burden in showing reasonable or due diligence in the execution of the warrant of arrest for appellant, and would sustain ap-

pellant's first ground of error for this reason and would order the case reversed and judgment rendered in favor of appellant.

Although not raised by appellant as a ground of error, there is another issue in this cause that should be considered in the interest of justice, see Sec. 13, Art. 40.09, V.A.C.C.P., and I do so.

There is no dispute that appellant was placed on probation on February 2, 1978, and there is no dispute he was given certain conditions of probation on that date, and there is no dispute he was assigned and was interviewed by a probation officer on that same day, and was admonished by the probation officer to comply with the conditions of probation. *However*, that apparently was the end of any relationship between appellant and Mr. Chaviers, the Nacogdoches County probation officer, for Chaviers testified he never thereafter saw appellant in person. "I transferred the case." This "transfer" consisted of Chaviers causing a Mr. Richard Brice, Chief Probation Officer of Nacogdoches County, to write a letter to one Frank J. Keegan at 401 Caroline Street, 2nd Floor, Houston, Texas, 77002, and, among other things, the letter is entitled "Intrastate Placement Request," and states: "*It is requested that an investigation be made with a view toward acceptance of this case for supervision.*" The record nowhere reflects who or what Keegan may be or who he represents. Though I personally know Frank Keegan is head of the Harris County Adult Probation Department, the law does not permit me to take judicial notice of this fact. See McCormick and Ray, *Texas Practice*, 2nd ed., Evidence, Sec. 151, p. 170. The letter also states: "Mr. Hardman has been instructed to contact *your* probation department the week of May 8th–May 12th." Brice also sent a letter dated the same day, April 24, 1978, addressed to "Steven Lyle Hartman, 110 Bagby, Houston, Texas," stating: "Dear Steven: *Contact the Harris County Probation Department the week of May 8th–May 12th for consideration of courtesy supervision.*" "They are located at 401 Caroline Street, 2nd Floor, Houston, Texas; Phone: 713–229–9661." "If you have any ques-

tions, contact me." In addition to the above letters, a Mr. Brett Walker also sent a letter dated August 7, 1978 to "Steven L. Hardman," which stated: "As per our letter dated 4/24/78 you were to report to the Harris County Probation Department." "They have notified me that they have not had any contact with you whatsoever." "You are to report to them within 10 days." "*Failure to do so may be considered a violation of your probation.*"

Peter Zama, an Adult Probation Officer assigned to the 174th Judicial District Court in Harris County, Texas, testified he received the above letters, but he also never personally met appellant, although he had "contact" with appellant in March, 1978. This "contact" apparently occurred when he, too, wrote a letter to "Steven Lyle Hartman," but at the hearing he did not have a copy of any such correspondence nor did he know when he mailed a letter to "Steven Lyle Hartman." He subsequently wrote a letter to the "Nacogdoches County Probation Department." He thereafter closed his file on "Steven Lyle Hartman."

Chaviers also testified that when he interviewed appellant he told appellant he could live anywhere he desired "uh, for employment purposes or other purposes, and, uh, that he should receive a letter from us." "Also, that the probation department in that jurisdiction would receive a letter *and the instructions would be in the letter as to when to report.*"

During the hearing, appellant's counsel continuously raised the question of whether there had been an unlawful delegation of power by the trial court or whether there was an unlawful exercise of power by the probation department's employees. It is undisputed that neither Judge Bartlett nor Judge Pierce, nor any other judge for that matter, ever orally granted appellant permission to go anywhere, much less Houston, Harris County, Texas, although the written formal judgment signed by Judge Bartlett does state: "Remain as a resident and *within the limits of Harris of the State of Texas,* unless you are permitted to depart by

the Court and/or Probation Department." Appellant personally received a copy of this instrument. Apparently, in Nacogdoches County a copy of the formal judgment also constitutes the "conditions of probation." About all the original proceedings show on this point is that Judge Bartlett, after completion of the plea and punishment proceedings, told appellant to "go with the probation officer."

So, from this record, I find the following:

(1) Appellant is placed on probation.

(2) He is told by the trial court to go with a probation officer.

(3) He receives a copy of the written judgment which, among other things, tells him to "remain as a resident and within the limits of Harris of the State of Texas."

(4) The probation officer tells appellant *he could live anywhere he desired* for employment purposes or other purposes.

(5) Another probation officer wrote a letter to a Frank Keegan requesting him to make an investigation "with a view toward acceptance of this case for supervision."

(6) A letter addressed to "Steven Lyle Hartman" was sent telling the person to "contact" the Harris County Probation Department "for consideration of a courtesy supervision."

(7) Another such letter was sent saying the person was to "report" to the Harris County Probation Department.

(8) A Harris County Probation Officer also wrote a letter to "Steven Lyle Hartman."

(9) All of these letters were sent non-certified and whether they were received by "Steven Lyle Hartman" or returned is not shown by the testimony adduced or by this record.

All of the parties in this cause appear to have lost sight of the fact that only the trial court having jurisdiction of the case shall determine and fix the term and conditions of probation. The trial court may not

delegate this authority to a probation officer or anyone else. See *McDonald v. State*, 442 S.W.2d 386 (Tex.Cr.App.1969); *DeLeon v. State*, 466 S.W.2d 573 (Tex.Cr.App.1971); *Kuenstler v. State*, 486 S.W.2d 367 (Tex.Cr.App.1972); and Art. 42.12, Secs. 5 and 6, V.A.C.C.P.

Not only does it appear that the probation officers below forgot this rule, but all the parties below appear to have overlooked Sec. 9 of Art. 42.12, V.A.C.C.P., which provides: "If, for good and sufficient reasons, probationers desire to change their residence within the State, *such transfer may be effected by application to their supervising probation officer, which transfer shall be subject to the court's consent and subject to such regulation as the court may require in the absence of a probation officer in the locality to which the probationer is transferred.*" There should be absolutely no question from this record that this provision was not complied with in this cause.[2] There is not a scintilla of evidence in the original proceedings to show appellant was ever officially transferred from Nacogdoches County. The Probation Department of Harris County never officially accepted appellant as a probationer. It is the trial court and not some probation officer who decides whether the probationer may transfer, and even then his actions are conditioned upon the probationer being accepted by the receiving probation department.

Here, the probationer is told by the written judgment that he is to "Remain as a resident and within the limits of Harris of the State of Texas, unless you are permitted to depart by the Court and/or Probation Department." Appellant then personally meets with a Nacogdoches County probation officer, who testified he never saw appellant again because: "I transferred the case." Letters are sent to, presumably, the Harris County Adult Probation Department, asking them if they would make an investigation to see if they would later accept appellant as a probationer. When

---

**2.** If it is the intention of the parties, and the trial court, at the time a person is placed on probation, that he shall be transferred to another jurisdiction, the record should affirmatively show this, but this record does not.

their investigation did not prove fruitful, they, too, "transferred the case," presumably back to Nacogdoches, but until the hearing on the motion to revoke, it appears that from the time Nacogdoches "transferred" the case, that probation office had nothing further to do with the case.

It has been said that the relationship between the court and the probationer is contractual in nature, see *McDonald*, supra, and the cases cited therein, and that conditions of probation should be clearly set forth in the judgment and order granting probation so the probationer and the authorities may know with certainty what the conditions are. Therefore, based upon contract law, I find the State is estopped by its actions toward the "contract," in claiming that appellant failed to report. See *City of Lubbock, Texas v. Green*, 201 F.2d 146 (5th Cir. 1953). To hold otherwise would put appellant in the unenviable position of having to report to two different probation departments at the same time, on the same day, in different counties, approximately 143 miles as the crow flies. I would therefore hold a probationer cannot be required to report to two different probation departments under these circumstances. See also infra, footnote 3.

The State alleged other violations, namely, that appellant failed to pay court costs, failed to pay a monthly supervisory fee, failed to pay restitution, and failed to pay his court appointed attorney's fee. However, in searching the record of the hearing, from top to bottom and sideways, there is not only no evidence to show a violation of any of these alleged conditions, there is not even a scintilla of evidence to support the allegations. In fact, the following is what was adduced concerning these alleged violations.

Q [Mr. Hancock] And, did you explain the term and condition of probation in reference his monthly reportings?

A [Mr. Chaviers] Yes.

Q Did you explain that to him in writing and in person, also?

A Yes, I did.

Q All right, sir. I believe that term and condition is in that judgment that the Defendant himself received, is that not correct?

A Yes.

Q Did you also tell, uh, the Defendant verbally and in writing that he had to pay the cost of court, which was $65.20 within sixty days from the date of the judgment?

A Yes.

Q Did you also tell the Defendant this one, Mr. Steven Lyle Hardeman that he was to pay $15.00 per month as provided by law in this cause?

A Yes.

Q All right, sir. Did you also tell him he had to pay restitution in the amount of $25.00 at a rate of $25.00 per month commencing on the first day of the coming month after the probation was granted?

A That's correct.

Q Did you also advise him that he had to pay attorneys' fees in the amount of $250.00 at the rate of $50.00 per month?

A That's correct.

Q Was these, uh, admonishments made both in writing and in person by you?

A Yes, they were.

The record does, however, reflect that Mr. Hancock offered and had introduced into evidence, without objection, "the original judgment that's in the file of the District Court," and also had admitted into evidence, without objection, "a copy of the original records contained in Mr. Gartman's office in Cause Number 10,533–78–1, uh, date of entry, February 2nd, 1978, stating, 'Two Years Probation,' the probation records out of the District Clerk's office in this case as State's Exhibit Number Two, if it please the Court." No person, not even a deputy district clerk or the clerk of the court, ever testified to these documents or what they represent or what they purport to represent. All the instrument, labeled "PROBATION RECORD," reflects is the following and no more.

Vol. 2   Page 281

## PROBATION RECORD

**145TH JUDICIAL DISTRICT COURT**
**STATE'S EXHIBIT**
**# 2**

NAME        STEVEN LYLE HARDMAN          NO. 10,533–78–1

PAY COURT COST OF $65.20 WITHIN 60 DAYS          2–2–78

2 YEARS

PAY PROBATION FEE IN THE AMOUNT OF $15.00 PER MONTH

PAY RESTITUTION IN THE SUM OF $25.00

PAY ATTORNEY FEE OF $250.00 AT THE

NOTES: RATE OF $50.00 PER MONTH TO MARTHA MC CABE UNTIL PAID IN FULL

| Date | Receipt No. | Amount | Balance |
|------|-------------|--------|---------|
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |
|      |             |        |         |

Only by speculation could anyone say what this document stands for or what it means, etc. What is missing, in this regard, is "*testimony*," for as Judge Roberts, speaking for a majority of this Court, said in *Gassett v. State*, 532 S.W.2d 328, 330 (Tex. Cr.App.1976):

\*   \*   \*   \*   \*   \*

Art. 3737e, V.T.C.A., sets out the well-recognized "business records" exception to the hearsay rule. Subsection 1 thereof states three prerequisites to the introduction of a relevant business record or memorandum: (a) it must have been made in the regular course of business, (b) by an employee or representative with personal knowledge of its contents, (c) at or near the time in question. The record or memorandum may be offered by the entrant, custodian, or other qualified witness, even though he may lack personal knowledge of its contents. Art. 3737e, Sec. 2. *Lumpkin v. State*, 524 S.W.2d 302 (Tex.Cr.App.1975). "Business" is defined broadly enough in Sec. 4 to include the law enforcement agencies involved herein. *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App.1973). Section 3 permits *testimony* as to the absence of such a record or memorandum and would seem to con-

trol the situation at bar. The only prerequisite stated in Sec. 3 to the introduction of such testimony showing the non-existence of an act, event, or condition is that the judge must find that such act, event, or condition would otherwise be recorded and preserved in the ordinary course of business at or near the time in question. Presumably the testimony contemplated by Sec. 3 should be given by the "entrant, custodian or other qualified witness" mentioned in Sec. 2.

In sum, there is nothing to show *this record was the record* to show payments or non-payments by appellant. There is not a scintilla of evidence in this record to show any connection between the Clerk of the District Court of Nacogdoches County and the Nacogdoches County Adult Probation Department, or vice-versa, other than a statement in the judgment that "The Clerk of the Court will furnish the Probation Department and the Defendant a copy of this order, and shall note on the docket sheet that date of delivery of such to the Defendant." A business record, like a motion of an accused, is not a self-proving document. As to its contents, or non-contents, as here, there must be proof. This instrument, at a minimum, represents zero evidence. See *Salas v. State*, 403 S.W.2d 440 (Tex.Cr.App. 1966); and *Steves Sash and Door Co. v. WBH Intern.*, Tex.Civ.App., San Antonio, 575 S.W.2d 355 (1978) (no writ hist.).

It may be that four letters were mailed to a person bearing the same name as appellant, but there is no evidence to show that the letters were ever received by appellant.

It is true there is an equitable maxim that says, "He who comes into equity must come with clean hands," but I find there is another equitable maxim more appropriate to this cause and that is "Equity regards as done that which ought to be done," and, in my opinion, based upon this record, I have done what ought to be done and that is to recommend this case be reversed.

Since there is no showing that appellant has violated a lawful condition of probation imposed by the court, I conclude that the trial court abused its discretion in revoking probation.[3]

I would therefore order this cause to be reversed and judgment rendered[4] for appellant.

3. The judgment, as to the condition of probation to report, states: "Report to the Probation Department monthly in writing between the 1st and 10th of each month and in person within ten days of notice to do so and permit the Probation Department Officers to visit you at your home or elsewhere." The application to revoke alleged this and also alleged appellant failed to report from March through September, 1978, inclusive. The Order of Revocation tracks the application verbatim. In addition to what I have said above, the phrase "Report to the Probation Department" is extremely vague and ambiguous, for it is impossible for one "to report to the Probation Department." In light of this record, where the trial court sets this type condition and then tells the probationer to go with the probation officer and it is not shown where the probationer went and the probation officer then "transfers" the probationer but there is no change in the condition of probation as to where the probationer is to report, in addition to the reasons given why I think this case calls for a reversal, this condition is probably so vague and ambiguous as to be a nullity. The condition of probation for reporting should clearly set out not only to whom the probationer is to report, but where, when and on what date he is to report. See *Harris v. State*, 608 S.W.2d 229 (Tex.Cr.App. 1980). Here, for all practical purposes, under this record, the way the condition is worded, it might as well not exist for it probably constitutes an unauthorized delegation of authority by the court to an employee of the probation department. See Presiding Judge Onion's pointed comments in *Cox v. State*, 445 S.W.2d 200, 202 (Tex.Cr.App. 1969). See also *Parsons v. State*, 513 S.W.2d 554 (1974), and the cases cited at page 556.

4. Of course, see *Frazier v. State*, 600 S.W.2d 271 (Tex.Cr.App.1980), I recognize that hearsay testimony admitted without objection at a revocation of probation hearing has probative value and may in and of itself constitute sufficient evidence in support of an order revoking probation, but the above clerk's document in question cannot be construed to meet this minimal standard of proof as this document represents, as a basis for revoking appellant's probation, *no evidence* to support the trial court's order of revocation. It is still zero evidence to support the allegations regarding payment of fees, costs and restitution and does not even come close to meeting the preponderance of the evidence standard of proof this Court requires in revocation cases. See *Scarmado v. State*, 517 S.W.2d 293 (Tex.Cr.App.1974). Zero plus zero plus zero still equals zero, if my math is correct.