James David PEACOCK, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–345–CR.

Court of Appeals of Texas,
Waco.

Aug. 30, 2000.

Gregg Hill, Sims, Moore, Hill & Gannon, L.L.P., Hillsboro, for appellant.

Dan V. Dent, Dist. Atty. for Hill County, Hillsboro, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

This is an appeal from an order revoking the appellant's probation. He raises two issues challenging: 1) the trial court's decision to grant the State's request to reopen the evidence after argument and 2) the trial court's denial of appellant's motion to dismiss the probation-revocation motion based on lack of due diligence by the State in executing the arrest warrant. We affirm.

### FACTS

On July 1, 1997, James David Peacock was convicted of felony bail jumping and placed on community supervision for two years. On April 20, 1998, the State filed a petition to revoke Peacock's community supervision alleging that he had violated several conditions, including failure to report and nonpayment of fees. The same day, the trial court issued a capias for his arrest. Peacock's probation expired on July 1, 1999. He was arrested September 26, 1999.

On October 22, 1999, the day of the revocation hearing, Peacock filed a pre-hearing motion to dismiss the probation-revocation motion asserting lack of due-diligence by the State in executing the capias. A hearing on Peacock's motion to dismiss was held, followed by the revocation hearing. The trial court denied Peacock's motion and revoked his probation. He was sentenced to two years in prison.

### ISSUE ONE: MOTION TO REOPEN EVIDENCE

■ In his first issue, Peacock contends the trial court erred by allowing the State to reopen and introduce additional evidence of due diligence at the hearing on the motion to dismiss after they had concluded argument.

At the hearing on Peacock's motion to dismiss, the State called one witness, a probation officer. Peacock called no witnesses. Then, Peacock and the State made their legal arguments. During argument, however, the State informed the court that it might ask to present more evidence if Deputy Cook found any other activity in the Peacock file. At the conclusion of argument, the court asked if there was anything else and counsel for the State indicated he had nothing further. However, prior to the court ruling on the motion, after only a short break, the State

immediately moved to reopen and called Deputy Cook. Peacock's trial counsel objected to this additional testimony. His objection was overruled. Thus, there is some question of whether the state had concluded arguments or whether it was conditional on whether Deputy Cook found any additional evidence the State wanted to present.

■ The decision to reopen a matter is left to the sound discretion of the trial court. *Cain v. State*, 666 S.W.2d 109, 111 (Tex.Crim.App.1984). In support of his position, Peacock cites to Article 36.02 of the Code of Criminal Procedure and case law that prohibits the reopening of the evidence after argument has been concluded. *Freeman v. State*, 917 S.W.2d 512 (Tex.App.—Fort Worth 1996, no pet.); TEX.CODE CRIM. PROC. ANN. art. 36.02 (Vernon Supp.2000). We believe *Freeman* can be factually distinguished. *Freeman*, 917 S.W.2d 512. First, *Freeman* involved the actual revocation hearing and not a hearing on a pre-hearing motion. Second, in *Freeman* the State moved to reopen after argument was clearly complete, the court had already rendered its verdict revoking probation, and the defendant had given his notice of appeal. Therefore, the appellate court held that the motion to reopen was essentially a motion for new trial and concluded it was error to allow the State to reopen because the defendant is the only one who can move for a new trial. *Id.* at 514. Third, unlike *Freeman*, in the present case the State had anticipated the need to reopen and requested the right to reopen if more information was obtained. Thus, *Freeman* is not applicable to the facts here.

The general rule is embodied in Article 36.02 of the Code of Criminal Procedure, which provides in part "[t]he court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (Vernon 1981). However, other courts have held this rule inapplicable to similar proceedings, i.e., hearing on a motion to suppress. *See Gilbert v. State*, 874 S.W.2d 290 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *Montalvo v. State*, 846 S.W.2d at 137–38. Accordingly, we find article 36.02 and *Freeman* inapplicable to the hearing on Peacock's motion to dismiss. Under the circumstances presented here, the trial court could, in its discretion, reopen the evidence on a pre-hearing motion to dismiss. The trial court did not abuse its discretion. Peacock's first issue is overruled.

*ISSUE TWO: DUE DILIGENCE*

■ In issue two, Peacock contends the trial court erred because the State did not exercise due diligence in arresting him after the petition to revoke his probation was filed and a warrant for his arrest had been issued.

■ The trial court must satisfy two requirements before it can acquire jurisdiction to revoke a defendant's probation after the probationary period expires. First, the State must file a motion to revoke before the end of the probationary period. *Brecheisen v. State*, 4 S.W.3d 761, 763 (Tex.Crim.App.1999); *Burch v. State*, 821 S.W.2d 385, 387 (Tex.App.— Waco, no pet.). Second, the State must issue a capias based upon this motion to revoke that orders the arrest of the probationer. *Id.*

■ In addition to these jurisdictional requirements, the court is required to use due-diligence in hearing and determining the allegations in the revocation motion. *Harris v. State*, 843 S.W.2d 34 (Tex.Crim. App.1992). Also, the State is required to use due-diligence in executing the capias that results from the motion to revoke. *Id.* The State's failure to exercise due-diligence in the execution of the capias gives rise to a plea in bar or defense. *Id.* Lack of due-diligence is not an affirmative defense. *Rodriguez v. State*, 804 S.W.2d 516, 519 (Tex.Crim.App.1991).

■ The defendant must raise the due-diligence defense at the revocation hearing to preserve this complaint for review on appeal. *Hardman v. State*, 614 S.W.2d 123 (Tex.Crim.App.1981) (holding that the probationer did not preserve his complaint for appellate review when he failed to raise the complaint before or during the revocation hearing that the State did show a diligent effort to apprehend him after filing a motion to revoke). The defendant cannot raise this complaint for the first time on appeal. *Id.* Once the defendant meets the burden of production by raising the due-diligence issue at the revocation hearing, the State has the burden of persuasion to show that it exercised due diligence. *Brecheisen*, 4 S.W.3d at 763; *Langston v. State*, 800 S.W.2d 553, 555 (Tex.Crim.App.1990).

The standard for determining diligence is not firmly established; however, several Court of Criminal Appeals' decisions give us some guidance. In *Rodriguez* and *Harris*, the court focused on the effort to apprehend the probationer between the filing of the motion to revoke and issuance of the arrest warrant and the time of apprehension. In *Rodriguez*, they arrested the defendant two years after they filed the motion for revocation and over a year after the probation period expired. In *Harris*, they arrested the defendant ten years after they filed the motion for revocation. In both cases, however, the evidence clearly established that the probation office knew the defendant's address at all times, but neither the police nor the probation officer tried to contact him. The Court found a lack of due diligence in both cases. In *Langston*, the court focused on the diligence shown between the termination of the probationary term and probationer's arrest. In *Langston*, they arrested the defendant eight months after they filed the motion for revocation and seven and a half months after the probationary period ended. Like the other two cases, the State knew the defendant's address during those months but did not explain the delay in apprehension. Therefore, the Court held that the State was not diligent.

In *Strickland*, eight months lapsed between the filing of the amended motion to revoke his probation and issuance of the arrest warrant and the date Strickland was apprehended. *Strickland v. State*, 523 S.W.2d 250 (Tex.Crim.App.1975). On appeal, Strickland complained of a lack of due diligence by the State in locating and apprehending him. However, this delay was explained when it was proven that Strickland's address at the time the motion to revoke was filed was entirely different from the address he had reported to the probation office. The Court held:

> In light of his failure to report his change of address to the probation office, we cannot say that the delay of eight months from the issuance of the second warrant until its execution constituted a lack of diligent effort to apprehend appellant.

*Strickland*, 523 S.W.2d at 251.

In this case, there is no dispute that the State filed the motion to revoke and that the capias for Peacock's arrest was issued before the end of the probationary period. Peacock, however, was not arrested until approximately three months after the probationary period had expired and seventeen months after the motion to revoke was filed and the capias was issued. On the day of the revocation hearing, Peacock filed a motion to dismiss the motion to revoke complaining about the lack of due-diligence in arresting him. Thus, the State had the burden to prove by a preponderance of the evidence that it exercised due-diligence in apprehending him. *Burch*, 821 S.W.2d at 387.

■ At the hearing on the motion to dismiss, Peacock asked his probation officer whether she had any record of the State's attempts to execute the outstanding capias. The probation officer answered in the negative. She stated that when Peacock became an absconder in March 1998, he was taken off her caseload

and a warrant was issued for his arrest. Deputy Cook testified that the warrant was entered into the TCIC system, a statewide computer system used by law enforcement to identify persons with outstanding warrants for their arrest. However, placing the warrant on the TCIC, without more, is not sufficient evidence to prove due diligence. *Harris*, 843 S.W.2d at 35.

In *Rodriguez*, *Langston*, and *Harris*, there was conclusive evidence in the record that the probation departments knew of the defendant's address at all times. But that was not the case in *Strickland*, nor is it here. There was no evidence establishing that Peacock had in fact lived at an address known by the State at all times. In fact, at the hearing on the motion to dismiss, the probation officer testified that Peacock had told her he was living in Fort Worth, but he continued to list a Whitney post-office box for his mailing address. So, there was some question as to his actual address. Deputy Cook testified that the Sheriff's office had attempted to contact Peacock by sending a letter to his last known mailing address informing him of the arrest warrant, but they received no response.

In view of the fact the Sheriff's office sent a letter and placed the warrant on the TCIC, we cannot conclude the State was not diligent. This is not a case where a significant amount of time elapsed between the end of Peacock's probationary period and his apprehension. Furthermore, it is clear from the record that the trial court was very aware of the issue regarding due diligence, and decided after due consideration of the evidence, arguments and relevant case law to deny the motion to dismiss. We hold that the trial court did not err in overruling the motion to dismiss. Accordingly, issue two is overruled.

### Conclusion

Having resolved both issues against Peacock, we affirm the order of the trial court.

Justice VANCE dissenting.

BILL VANCE, Justice dissenting.

The majority declares an attempt to assert the due-diligence defense to a motion to revoke community supervision dead-on-arrival.

The facts are straightforward. Peacock was on community supervision for two years—from July 1, 1997 to July 1, 1999. On April 20, 1998, the State filed a motion to revoke his community supervision, and the court issued a capias for his arrest. The *only* effort the State made to detain Peacock was to register the capias issued for his arrest with the Texas Criminal Information Management System (TCIC) and send a letter to his "last" mailing address (a Post Office Box in Whitney) advising him that a warrant for his arrest had been issued. Both things were done two days after the capias was issued. On September 26, 1999, over seventeen months after the issuance of the capias and some three months after his community supervision expired, the capias was served on Peacock.

The majority finds that the State has established due diligence, relying on the letter and the State's action in registering the warrant on TCIC. Nothing else in the record supports the finding of due diligence.

### *Standards*

This appeal raises several questions: What is the standard by which the State must prove that it exercised due diligence in executing an arrest warrant issued after a motion to revoke community supervision is filed? Has the State met the burden to show that it exercised due diligence in this case? What is the standard of review by which we review the trial court's decision that the State discharged its burden?

As we noted in *Burch v. State*, 821 S.W.2d 385, 387 (Tex.App.—Waco 1991, no pet.):

..., a court has *jurisdiction* to revoke probation after the probationary period expires if (1) a motion to revoke is filed before the term of probation expires and (2) a *capias* or warrant is issued prior to the expiration of the probationary period. Once these jurisdictional requirements have been established, they must be *followed by* proof from the State by a preponderance of the evidence that: (1) the defendant violated a term or condition of his probation; and, if due diligence is raised at the revocation hearing then, (2) due diligence was exercised to apprehend the defendant and (3) due diligence was exercised to hear the motion to revoke. *See Shaw v. State*, 622 S.W.2d 862, 863 (Tex.Crim.App. [Panel Op.] 1981) (holding that the standard of proof in revocation proceedings is a preponderance of the evidence).

The majority correctly asserts: "Once the defendant meets the burden of production by raising the due-diligence issue at the revocation hearing, the State incurs the burden of persuasion to show that it exercised due diligence." *Brecheisen v. State*, 4 S.W.3d 761, 763 (Tex.Crim.App. 1999). The majority, citing *Burch*, says that proof of diligence is required by a preponderance of the evidence. *Burch*, 821 S.W.2d at 387. *Burch*, however, relies on the general rule that the State's burden in revocation cases is the preponderance standard. *Id.* It does not speak directly to proof of diligence. Thus, the standard of proof of diligence at the trial level remains in question.

In the cases by the Court of Criminal Appeals cited by the majority, the Court appears to review *de novo* the evidence supporting the finding of due diligence. *See Harris v. State*, 843 S.W.2d 34, 36 (Tex.Crim.App.1992); *Rodriguez v. State*, 804 S.W.2d 516, 518 (Tex.Crim.App.1991); *Langston v. State*, 800 S.W.2d 553, 555 (Tex.Crim.App.1990). Doing so implies that the Court believes that diligence is a question of law. However, the Court of

Criminal Appeals has never explicitly said what manner of proof is required.

The standard of proof required in the trial court affects the standard of review by this court. The propriety of factual determinations is generally tested by a review of the evidence supporting the finding using legal and/or factual sufficiency standards. Other rulings are reviewed under the abuse-of-discretion standard. Although we have been given no guidance about how to review a determination by a trial court that the State used diligence in arresting the defendant on a revocation warrant, I would review the evidence supporting the finding of due diligence *de novo*, as the Court of Criminal Appeals did in the cited cases.

### The Evidence

At the hearing, the State called two witnesses—Deborah Pruitt, who identified herself as Peacock's "probation officer" and Mike Cook, a Hill County Deputy Sheriff. Pruitt testified that Peacock received permission to move to Fort Worth on August 6, 1997. Peacock missed several reporting dates after getting permission to move. Pruitt sent "letters" to Peacock's Whitney mailing address and he reported in October 1997. At that time, Peacock told Pruitt that he was living in Fort Worth. When he again failed to keep a scheduled appointment, she telephoned his mother in December 1997, and Peacock came to her office. After that visit, Peacock did not report again and the motion to revoke his community supervision was filed. Pruitt specifically testified about the State's efforts after the motion was filed:

Q (by the State): After April 20th of 1998, what did the Hill County Community Supervision and Corrections Department do to attempt to locate James David Peacock?

A: Mr. Peacock became an absconder in March of 1998. At that point he was taken off the case load, and when the warrant was issued it was placed on the

computer for the Sheriff's Department to arrest him.

Q: So do you know of anything the Community Supervision and Corrections did other than notify the Court through a violation report or a petition that the District Attorney filed for revocation in an attempt to locate him, or notify him of his violations and of his need to appear in Court?

A: No, sir.

Deputy Cook testified that the warrant for Peacock's arrest was entered into TCIC on April 22, 1998, and that a letter was sent "to his last mailing address" on the same day. He added nothing else to the State's proof of diligence.

### *Application*

I would find that this case is controlled by *Harris. Harris*, 843 S.W.2d at 36. There, the State knew where the defendant had lived in Brazos County, knew that he had requested permission to move to Fort Worth, and knew the address in Fort Worth where he could have been living. The Court of Criminal Appeals found the State's proof of diligence lacking because:

> For over two years after the capias issued, the State did nothing and has no explanation in the record for its inaction. Even after the probation office placed appellant on the absconder caseload in 1982, no evidence shows that anyone ever went to [the street where the defendant lived], wrote to [the street where the defendant lived], or made any effort to reach appellant's brother in

Fort Worth. These steps were not taken even though the Brazos County Probation Department knew appellant's first College Station address and knew from his supervision request that he could be with his brother in Fort Worth.

*Id.* Except for the letter mailed within days of the issuance of the capias, the State made no effort to locate or arrest Peacock. There is no evidence that the State attempted to contact his mother, even though an earlier effort to locate him through her had been successful, or to contact him in Fort Worth, even though the State knew the address at which he could be residing and had been told by Peacock that he was living there.

As the majority correctly notes, placing Peacock's name in TCIC is not sufficient to show due diligence. *See id.* at 35–36; *Sessions v. State*, 939 S.W.2d 796, 799 (Tex.App.—El Paso 1997, no pet.). I would hold that sending a single letter to Peacock's mailing address two days after the capias was issued constitutes no evidence of due diligence during the seventeen months that followed before Peacock was detained. Save for the one letter, "[f]or over [seventeen months] after the capias issued, the State did nothing and has no explanation in the record for its inaction." *See Harris*, 843 S.W.2d at 36.

Furthermore, the State cannot rely on Peacock's "lack of cooperation" to excuse its own lack of diligence. *See Langston*, 800 S.W.2d at 555. By relying on the absence of evidence to show where Peacock lived, the majority allows it to do just that.[1] Whether Peacock lived at the same

---

1. Moreover, the cases which the majority looks to for support of its consideration of the paucity of evidence concerning where Peacock lived do not actually support doing so. In *Harris*, the defendant lived in three different places, two of which the State knew about. *Harris v. State*, 843 S.W.2d 34, 35 (Tex.Crim.App.1992). However, he ultimately lived at the address which the State did not know about. *Id.* at 36. ("the Brazos County Probation Department knew appellant's *first* College Station address" (emphasis added)). In *Rodriguez*, the defendant's probation offi-

cer at the time the motion to revoke was filed, testified that he knew the defendant's home address and place of employment. *Rodriguez v. State*, 804 S.W.2d 516, 518 (Tex.Crim.App. 1991). The probation officer at the time of the defendant's arrest, some two years later, testified only that the defendant "advised [him that] he'd been in Beeville the whole time," not, significantly, that he knew the defendant's address. *Id.* Only in *Langston* does the opinion indicate that the State knew the de-

address the entire time or whether he advised the State of his new address whenever he moved is not the issue. *See id.* The burden is on the State to show what *it* did; there is no burden on Peacock to show what he did, and the majority's apparent reliance on the absence of evidence to show where Peacock lived during the seventeen months is improper as well.

The State has argued that we should "re-examine" the due diligence defense and adopt the criticism of it espoused by the concurring opinion in *Connolly v. State,* 983 S.W.2d 738, 741 (Tex.Crim.App. 1999) (Keller, J., concurring). Without forthrightly acknowledging so, the majority effectively discards the due diligence defense by finding due diligence out of the "thin air" of *total* inaction for over seventeen months. *See id.* In the courts governed by our decisions, "due diligence" from this point forward means that any action by the State will satisfy its burden. I cannot join this departure from the clearly established precedent.

Thus, I would hold that the State did not exercise due diligence in arresting Peacock after the warrant was issued on the motion to revoke his probation. *See Harris,* 843 S.W.2d at 36. I would reverse the judgment and remand the cause to the trial court with instructions to discharge Pea-·cock from community supervision.

Because the majority holds otherwise, I dissent.

fendant's address. *Langston v. State,* 800   S.W.2d 553, 555 (Tex.Crim.App.1990).